# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION

CR 4 2 0   0 5 6

| | |
|---|---|
| UNITED STATES OF AMERICA | ) INDICTMENT NO. _____ |
| | ) |
| v. | ) |
| | ) |
| SERENDIPITY BUSINESS | ) 18 U.S.C. § 1349 |
| SOLUTIONS, LLC, | ) Conspiracy to Commit |
| | ) Wire Fraud and Mail Fraud |
| TERRY XING ZHAO WU, | ) |
| | ) 21 U.S.C. § 846 |
| NATALIE YE MAN CHAN WU, | ) Drug Trafficking Conspiracy |
| | ) |
| WOONJIN LAM, | ) 18 U.S.C. § 1956(h) |
| a/k/a, "Larry Lam," | ) Money Laundering Conspiracy |
| a/k/a, "Larry Lin," | ) |
| | ) 18 U.S.C. § 2 |
| ANTHONY WU, | ) Aiding and Abetting |
| a/k/a, "Tony," | ) |
| | ) Forfeiture Allegation |
| BILLY CHEN, | ) |
| | ) |
| YING LE PANG, | ) |
| a/k/a, "Loc," | ) |
| | ) |
| PHOENIX FISHERIES, LLC, | ) |
| | ) |
| MARK LEON HARRISON, | ) |
| | ) |
| HEATHER HUONG NGOC LUU, | ) |
| a/k/a, "Tammy," | ) |
| | ) |
| LAM PHUOC QUANG, | ) |
| a/k/a, "Ken," | ) |
| a/k/a, "Kenny," | ) |
| | ) |
| KEVIN CHINH NGUYEN, | ) |
| | ) |
| ELIAS SAMUEL CASTELLANOS, | ) |
| | ) |
| and | ) |
| | ) |
| TERRY LOUIS SHOOK | ) |

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2020 JUL -8 PM 5:03
CLERK
SO. DIST. OF GA.

**THE GRAND JURY CHARGES THAT:**

<u>**Introduction:**</u>

1. At all times material to this Indictment, the defendants herein,

> **SERENDIPITY BUSINESS SOLUTIONS, LLC,**
> **TERRY XING ZHAO WU,**
> **NATALIE YE MAN CHAN WU,**
> **WOONJIN LAM,**
> a/k/a, "Larry Lam,"
> a/k/a, "Larry Lin,"
> **ANTHONY WU,**
> a/k/a, "Tony,"
> **BILLY CHEN,**
> **YING LE PANG,**
> a/k/a, "Loc,"
> **PHOENIX FISHERIES, LLC,**
> **MARK LEON HARRISON,**
> **HEATHER HUONG NGOC LUU,**
> a/k/a, "Tammy,"
> **LAM PHUOC QUANG,**
> a/k/a, "Ken,"
> a/k/a, "Kenny,"
> **KEVIN CHINH NGUYEN,**
> **ELIAS SAMUEL CASTELLANOS,**
> **TERRY LOUIS SHOOK,**

and others, were members and associates of a transnational criminal organization (the "Wu TCO"), whose members and associates engaged in wire fraud, international wildlife trafficking, drug trafficking, and money laundering, among other crimes, within the Southern District of Georgia, Northern District of Georgia, Northern District of California, Central District of California, Northern District of Florida, Eastern District of Michigan, District of Arizona, Hong Kong, Mexico, Canada, and elsewhere.

2

2.     The purpose of the Wu TCO was to make money from illegal activities, including wildlife trafficking and drug trafficking.   The Wu TCO further sought to hide millions of dollars in illegal proceeds by laundering the money through businesses and bank accounts.

### International Wildlife Trafficking

3.     Sharks are an apex predator and maintain an essential role in earth's marine ecosystem.   Sharks are protected wildlife under federal and state law to ensure their continued sustainability.

4.     Shark finning is the practice of removing and retaining shark fins at sea while the remainder of the living shark is commonly discarded and left to die in the ocean.   Shark finning is aimed at supporting the demand for shark fin soup, an Asian delicacy.   Federal law and applicable state law prohibit shark finning at sea.   *See* 18 U.S.C. § 1857(1)(P), Ca. Fish and Game Code § 2021, and Fla. Stat. Ann. § 379.2426.

5.     A landed shark is a harvested shark that has been brought to shore. There is very little financial incentive for commercial shark fisherman to land whole sharks because the price per pound of shark meat is significantly lower than the price per pound of shark fins.

6.     The Lacey Act, a federal fish and wildlife trafficking law, makes it unlawful for a person to make or submit a false record, account or identification of wildlife that has been or is intended to be transported in interstate or foreign commerce.   16 U.S.C. § 3372(d).

7.   Effective January 1, 2013, it was unlawful to sell, possess, trade or distribute shark fins in or from California.   Ca. Fish and Game Code § 2021. However, at all times material to this Indictment, Florida law allowed state licensed dealers to buy and sell saltwater products, including shark fins, so long as the licensed dealer reported the landing as required by Florida law and harvested or landed the entire shark.   Fla. Stat. Ann. § 370.07.   Although a licensed dealer could buy and sell shark fins, Florida law required that all sharks must be retained in whole condition with heads, tails, and fins attached until landed and specifically prohibited the practice of shark finning.   Fla. Stat. Ann. § 379.2426.

8.   Thus, licensed dealers in Florida, but not California, could sell, possess, trade or distribute shark fins provided the dealer properly harvested the entire shark and accurately recorded, accounted, and identified all shark fins shipped in interstate or foreign commerce to ensure the harvesting, shipping, and transportation of the protected wildlife complied with federal and state law.

9.   From at least 2013 and continuing through the return date of this Indictment, the Wu TCO engaged in international wildlife trafficking by unlawfully operating a business dealing in shark fins in violation of federal and state law.   The Wu TCO purported to use a front shark fin business in Florida, but in reality, unlawfully operated a shark fin business in California to ship shark fins to Hong Kong.   The Wu TCO unlawfully wired money made from a scheme to unlawfully deal in shark fins to third party business bank accounts to hide millions of dollars in illegal proceeds and promote the unlawful activity.

4

## Drug Trafficking

10.     Federal law makes it unlawful to distribute marijuana, a controlled substance.   21 U.S.C. § 841(a)(1).   In violation of federal law, the Wu TCO engaged in drug trafficking by unlawfully shipping marijuana from California to Savannah, Georgia, and elsewhere.

11.     From at least 2010 through the return date of this Indictment, the Wu TCO attempted to hide the drug trafficking proceeds through purported seafood transactions, rather than the actual drug transactions.   The Wu TCO unlawfully wired money made from a scheme to distribute marijuana to third party business bank accounts to hide millions of dollars in illegal proceeds.

## The Defendants

12.     **Defendant Serendipity Business Solutions, LLC** was a California company that engaged in international wildlife trafficking, drug trafficking, and money laundering.

13.     **Defendant Terry Xing Zhao Wu** was the operator of **Defendant Serendipity Business Solutions, LLC** and responsible for ordering when to export shark fins and authorizing payments for shark fins.   **Defendant Terry Xing Zhao Wu** also handled the sale of shark fins to conspirators in Hong Kong.

14.     **Defendant Natalie Ye Man Chan Wu** was the registered agent and manager of **Defendant Serendipity Business Solutions, LLC**.   **Defendant Natalie Ye Man Chan Wu** was responsible for conducting financial transactions and signing checks for payment of shark fins.

15.    Defendant **Woonjin Lam**, a/k/a, "Larry Lam," a/k/a, "Larry Lin," was an associate of **Defendant Terry Xing Zhao Wu** and involved in the distribution of marijuana and money laundering. **Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** was responsible for coordinating and conducting drug transactions.

16.    Defendant **Anthony Wu**, a/k/a, "Tony," was an associate of **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** and involved in money laundering.

17.    Defendant **Billy Chen** was an associate of **Defendant Terry Xing Zhao Wu** and involved in international wildlife trafficking.

18.    Defendant **Ying Le Pang**, a/k/a, "Loc," was an associate of **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** and involved in the distribution of marijuana. **Defendant Ying Le Pang, a/k/a, "Loc,"** assisted **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** in drug transactions.

19.    Defendant **Phoenix Fisheries, LLC**, was a Florida company that engaged in international wildlife trafficking and money laundering.

20.    Defendant **Mark Leon Harrison** was the owner, incorporator, registered agent, and manager of **Defendant Phoenix Fisheries, LLC**. **Defendant Mark Leon Harrison** was responsible for preparing false and misleading commercial invoices and export documents for shark fins for **Defendant**

6

Phoenix Fisheries, LLC. **Defendant Mark Leon Harrison** was an associate of **Defendant Terry Xing Zhao Wu,** and involved in international wildlife trafficking.

21. **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** was an associate of **Defendants Terry Xing Zhao Wu, Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin," Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny," Kevin Chinh Nguyen, Elias Samuel Castellanos**, and **Terry Louis Shook**, and involved in money laundering. **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** was responsible for transporting bulk cash from illegal proceeds and wiring the illegal proceeds to third party business bank accounts to hide millions of dollars in illegal proceeds.

22. **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** was an associate of **Defendants Terry Xing Zhao Wu, Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin," Heather Huong Ngoc Luu, a/k/a, "Tammy," Kevin Chinh Nguyen,** and **Elias Samuel Castellanos**, and involved in money laundering. **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** was responsible for transporting bulk cash from illegal proceeds to be wired to third party business bank accounts to hide millions of dollars in illegal proceeds.

23. **Defendant Kevin Chinh Nguyen** was an associate of **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** and involved in money laundering. **Defendant Kevin Chinh Nguyen** was responsible for transporting bulk cash used in money laundering.

24. **Defendant Elias Samuel Castellanos** was an associate of **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy," and Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** and involved in money laundering. **Defendant Elias Samuel Castellanos** was responsible for transporting bulk cash from illegal proceeds.

25. **Defendant Terry Louis Shook** was an associate of **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy," and Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** and involved in drug trafficking.

## COUNT ONE
*Conspiracy to Commit Wire Fraud and Mail Fraud*
18 U.S.C. § 1349

26.     Paragraphs 1 through 25 of the Indictment are incorporated by reference as if fully set forth herein.

27.     Beginning at a time unknown to the Grand Jury, but at least from in or about 2010 and continuing through the return date of this indictment, the precise dates being unknown, in Chatham County, within the Southern District of Georgia, and elsewhere, the defendants herein,

**SERENDIPITY BUSINESS SOLUTIONS, LLC,**
**TERRY XING ZHAO WU,**
**NATALIE YE MAN CHAN WU,**
**WOONJIN LAM,**
**a/k/a, "Larry Lam,"**
**a/k/a, "Larry Lin,"**
**ANTHONY WU,**
**a/k/a, "Tony,"**
**BILLY CHEN,**
**YING LE PANG,**
**a/k/a, "Loc,"**
**PHOENIX FISHERIES, LLC,**
**MARK LEON HARRISON,**
**HEATHER HUONG NGOC LUU,**
**a/k/a, "Tammy,"**
**LAM PHUOC QUANG,**
**a/k/a, "Ken,"**
**a/k/a, "Kenny,"**
**KEVIN CHINH NGUYEN,**
**ELIAS SAMUEL CASTELLANOS,**
**TERRY LOUIS SHOOK,**

aided and abetted by each other and by others known and unknown, with some

9

joining the conspiracy earlier and others joining later, did knowingly and willfully combine, conspire, confederate, and agree together and with each other, and with others known and unknown, to commit certain offenses, to wit:

a. Wire Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, text messages, phone calls, email messages, and financial transactions, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343; and,

b. Mail Fraud, that is, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1341.

## OBJECT OF THE CONSPIRACY

28. It was the object of the conspiracy to make money from illegal activities, including wildlife trafficking and drug trafficking, and then hide the illegal proceeds through third party business accounts to appear legitimate.

## MANNER AND MEANS OF THE CONSPIRACY

29.     It was part of the conspiracy that members of the conspiracy and others would avoid international, federal, and state wildlife trafficking laws to make money and meet the demand for shark fins in the Asian market.

30.     It was further part of the conspiracy that members of the conspiracy and others would create and submit false applications for import/export licenses to United States Fish and Wildlife Services in appear legitimate while conducting business regulated by international, federal, and state wildlife trafficking laws.

31.     It was further part of the conspiracy that members of the conspiracy and others would unlawfully smuggle shark fins from Mexico to ultimately be exported to Hong Kong.

32.     It was further part of the conspiracy that members of the conspiracy and others created **Defendant Phoenix Fisheries, LLC**, a front seafood company in Florida.

33.     It was further part of the conspiracy that **Defendant Phoenix Fisheries, LLC** was created in Florida because possessing, selling, and shipping certain shark fins was lawful in Florida and **Defendant Mark Leon Harrison** had contacts with shark fin dealers.

34.     It was further part of the conspiracy that members of the conspiracy and others operated **Defendant Serendipity Business Solutions, LLC,** an unlawful shark fin business operating in California that directed the trade and distribution of shark fins to Hong Kong in violation of California and federal law.

35.     It was further part of the conspiracy that members of the conspiracy and others would hide the unlawful shark fin business conducted through **Defendant Serendipity Business Solutions, LLC,** by purporting to use **Defendant Phoenix Fisheries, LLC**, the front seafood business in Florida.

36.     It was further part of the conspiracy that members of the conspiracy and others would create fake invoices and paperwork to make it appear that **Defendant Phoenix Fisheries, LLC** in Florida was invoicing and financing the shark fin business.

37.     It was further part of the conspiracy that **Defendant Serendipity Business Solutions, LLC** in California was actually financing and controlling the shark fin business.

38.     It was further part of the conspiracy that members of the conspiracy and others would wire illegal profits from the shark fin business to third party business accounts to hide the illegal profits.

39.     It was further part of the conspiracy that members of the conspiracy and others would make money by distributing marijuana in violation of federal law.

40.     It was further part of the conspiracy that members of the conspiracy and others would require bulk cash be mailed to California for advanced payment of marijuana.

41.     It was further part of the conspiracy that members of the conspiracy and others would require wire transfers of money to bank accounts for advanced payment of marijuana.

12

42.     It was further part of the conspiracy that members of the conspiracy and others would mail marijuana from California to Savannah, Georgia.

43.     It was further part of the conspiracy that members of the conspiracy and others would misrepresent financial transactions to hide illegal drug proceeds as purported seafood transactions.

44.     It was further part of the conspiracy that members of the conspiracy and others would wire illegal drug proceeds to third party business accounts to hide the illegal profits.

45.     It was further part of the conspiracy that members of the conspiracy and others would charge a commission fee for unlawfully depositing millions of dollars of illegal profits into business accounts to hide the illegal profits.

46.     It was further part of the conspiracy that members of the conspiracy and others would deposit bulk cash from drug trafficking, into third party business accounts that dealt in gold, precious metals, and jewels to hide the illegal profits.

47.     It was further part of the conspiracy that members of the conspiracy and others would unlawfully deposit millions of dollars from illegal activities into third party business accounts located in the United States, Mexico, and Hong Kong, to hide the illegal profits.

**OVERT ACTS**

48.     In furtherance of the conspiracy and to effect the object thereof, the Defendants and others committed the below-listed overt acts, among others:

13

a. On or about June 4, 2013, **Defendant Natalie Ye Man Chan Wu** registered **Defendant Serendipity Business Solutions, LLC** as a limited liability company in California.

b. On or about June 24, 2013, **Defendant Mark Leon Harrison** registered **Defendant Phoenix Fisheries, LLC** as a limited liability company in Florida.

c. Between March 5, 2014 and continuing through at least January 17, 2017, **Defendants Natalie Ye Man Chan Wu, Terry Xing Zhao Wu** and **Mark Leon Harrison**, communicated by emails concerning false or misleading invoices and payments for shark fins through **Defendants Phoenix Fisheries, LLC.**

d. Between March 5, 2014 and continuing through at least January 17, 2017, **Defendants Natalie Ye Man Chan Wu, Terry Xing Zhao Wu** and **Mark Leon Harrison**, communicated by emails that **Defendants Natalie Ye Man Chan Wu, Terry Xing Zhao Wu**, and **Serendipity Business Solutions, LLC** were in fact paying for all the shark fins purportedly purchased and invoiced by **Defendants Mark Leon Harrison** and **Phoenix Fisheries, LLC.**

e. On September 11, 2016, **Defendant Phoenix Fisheries, LLC,** exported 2,948 kilograms of dried shark fins through the port of Savannah to co-conspirators in Hong Kong. The declared value of the shipment was $159,965.

f. On April 9, 2017, **Defendant Phoenix Fisheries, LLC,** exported 2,722 kilograms of dried shark fins through the port of Savannah to co-conspirators in Hong Kong. The declared value of the shipment was $63,600.

g.    On July 24, 2017, **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** possessed $1,778,001 in cash concealed in sealed plastic bags that was seized by law enforcement during a traffic stop in Meridian, Mississippi. **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** admitted that he was paid $10,000 to transport the cash from Atlanta, Georgia to Los Angeles, California.

h.    On November 14, 2018, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source and discussed distributing marijuana to Savannah, Georgia.

i.    On December 3, 2018, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source and arranged for the distribution of marijuana to Savannah, Georgia through the mail.

j.    On December 5, 2018, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** received a text message concerning the distribution of marijuana.

k.    On December 6, 2018, **Defendant Ying Ling Pang, a/k/a, "Loc,"** aided and abetted by **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** received $4,200 in cash for advance payment of approximately three pounds of marijuana.

15

l.      On December 10, 2018, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** mailed approximately three pounds of marijuana from California to Savannah, Georgia using the United States Postal Service.

m.      On December 10, 2018, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source confirming that he mailed marijuana from California to Savannah, Georgia and provided the tracking number.

n.      On February 19, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source concerning payment for the distribution of marijuana.

o.      On February 20, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source concerning payment for the distribution of marijuana.

p.      On February 20, 2019, **Defendant Ying Ling Pang, a/k/a, "Loc,"** aided and abetted by **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** received $35,000 in cash for advance payment of approximately twenty-five pounds of marijuana to be mailed to Savannah, Georgia.

q.      On February 21, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** texted a confidential source for the address to mail the approximately twenty-five pounds of marijuana in Savannah, Georgia.

r.     On February 21, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a confidential source concerning mailing marijuana.

s.     On February 21, 2019, **Defendant Ying Ling Pang, a/k/a, "Loc,"** aided and abetted by **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** mailed approximately twenty-five pounds of marijuana from California to Savannah, Georgia using the United States Postal Service.

t.     On May 15, 2019, **Defendant Terry Xing Zhao Wu** communicated by text messages with a cooperating source to arrange a meeting in California.

u.     On May 15, 2019, **Defendant Terry Xing Zhao Wu** met with a cooperating source in Burlingame, California and discussed wildlife trafficking and transporting and investing at least $2,000,000 in bulk cash for a fee. **Defendant Terry Xing Zhao Wu** further discussed obtaining additional inventory of shark fins from Mexico.

v.     On July 18, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source concerning the distribution of marijuana.

w.     On July 19, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source concerning payment for the distribution of marijuana.

x.      On July 19, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source concerning with bank account information for **Defendant Serendipity Business Solutions, LLC** to receive the wire payment for the distribution of marijuana.

y.      On July 22, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source concerning payment for the distribution of marijuana.

z.      On July 23, 2019 **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source concerning a wire transfer of $42,500 to be referenced as Seafood for the purchase of approximately twenty-five pounds of marijuana to be mailed to Savannah, Georgia.

aa.     On July 24, 2019, **Defendant Serendipity Business Solutions, LLC** received a wire transfer of $42,500 for advance payment for approximately twenty-five pounds of marijuana to be mailed to Savannah, Georgia.

bb.     On July 26, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated by text messages with a cooperating source confirming receipt of the wire transfer of $42,500 for approximately twenty-five pounds of marijuana to Savannah, Georgia.

cc.     On July 31, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source requesting the address in Savannah to mail the marijuana.

dd.    On August 2, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source confirming that marijuana was mailed to Savannah, Georgia and provided the tracking number.

ee.    On August 13, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated with a cooperating source to arrange a meeting in person in California.

ff.    On August 16, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** met with a cooperating source at 1800 Via Arroyo, San Lorenzo, California, **Defendant Ying Ling Pang's a/k/a, "Loc's,"** residence, and received $10,000 in advance payment for marijuana.

gg.    On August 17, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated by phone and provided a cooperating source the bank account information for **Defendant Anthony Wu, a/k/a, "Tony,"** to wire payment for the distribution of marijuana.

hh.    On or about August 21, 2019 **Defendant Anthony Wu, a/k/a, "Tony,"** aided and abetted by **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** received an incoming wire in the amount of $21,900 into his Chase Bank Account ending in 9881.

ii.    On August 26, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message confirming that approximately twenty pounds of marijuana was mailed from California to Savannah, Georgia and provided the tracking number.

jj.     On August 26, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** communicated on the phone with a cooperating source regarding **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** shipping approximately twenty pounds of marijuana to Savannah, Georgia. **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** also discussed a Los Angeles, California based money launderer, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy."**

kk.     On August 26, 2019, **Defendant Woonjin Lam, a/k/a, "Larry Lam," a/k/a, "Larry Lin,"** sent a text message to a cooperating source with the phone number for **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy."**

ll.     Between August 27, 2019 and August 29, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated by phone and text messages with an undercover DEA agent to arrange a meeting in person in California.

mm.     On August 29, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Elias Samuel Castellanos** met with an undercover DEA agent in California and agreed to launder money in exchange for a commission fee.  **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Elias Samuel Castellanos** received $100,000 in cash to wire into third party business accounts to hide criminal proceeds.

nn.     On or about September 4, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** confirmed that $94,000 from US Bank account ending

20

in 6948 was wired into an undercover DEA account. The $94,000 representing the $100,000 laundered, minus the commission fee.

oo. Between September 11, 2019 and September 12, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated by phone with an undercover DEA agent concerning laundering $200,000.

pp. On September 19, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** met with an undercover DEA agent in California and agreed to launder $200,000 in exchange for a commission fee. **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** received $200,000 in cash to wire into third party business accounts to hide criminal proceeds.

qq. On September 20, 2019 and September 23, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** confirmed that two deposits totaling $188,000 were deposited into an undercover DEA Account. The $188,000 represented the $200,000 laundered, minus the commission fee.

rr. On October 29, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Elias Samuel Castellanos** met with an undercover DEA agent and agreed to launder money in exchange for a commission fee. **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Elias Samuel Castellanos** received $200,000 in cash to wire into third party business accounts to hide criminal proceeds.

ss.     On or about November 4, 2019, conspirators wired $188,000 from US Bank account ending in 7763 into an undercover DEA account.   The $188,000 representing the $200,000 laundered, minus the commission fee.

tt.     On January 8, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** met with an undercover DEA agent in Savannah, Georgia and agreed to launder money in exchange for a commission fee.

uu.     On January 9, 2019, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** received $500,000 in cash to wire into third party business accounts to hide criminal proceeds.

vv.     On January 9, 2020, conspirators wired $70,000 from US Bank account ending in 3336 into an undercover DEA account.   The $70,000 representing a portion of the $500,000 received by **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny."**

ww.     On January 13, 2020, conspirators wired $198,000 from Chase Bank account ending in 6716 into an undercover DEA account. The $198,000 representing a portion of the $500,000 received by **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny."**

xx.     On February 6, 2020, conspirators wired $16,670 from Community Choice Credit Union account ending in 8940 into an undercover DEA

22

account.    The $16,670 representing a portion of the $500,000 received by **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny."**

yy.     On February 18, 2020, conspirators wired $80,000 from Chase Bank account ending in 6716 into an undercover DEA account.    The $80,000 representing a portion of the $500,000 received by **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny."**

zz.     On February 25, 2020, conspirators wired $72,315 from **Defendant Terry Louis Shook's** bank account in Grosse Pointe Park, Michigan into an undercover DEA account.    The $72,315 representing a portion of the $500,000 received by **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Defendant Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny."**

aaa.    On or about January 5, 2020 and January 15, 2020, **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated with **Defendant Terry Louis Shook** concerning the distribution of marijuana.    The conversations occurred on WhatsApp, a cell phone app that allows users to send text messages and voice messages.

bbb.    On February 26, 2020, **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy,"** and **Kevin Chinh Nguyen** possessed $170,640 in cash that was seized by law enforcement during a traffic stop in Grand Junction, Colorado. **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** admitted that the money

23

came from "Terry" and provided **Defendant Terry Louis Shook's** phone number. **Heather Huong Ngoc Luu, a/k/a, "Tammy,"** further admitted that they were driving from a meeting in Detroit and headed back to California when they were stopped in Grand Junction, Colorado.

ccc.    On January 31, 2020 and February 25, 2020, **Defendant Heather Huong Ngoc Luu's, a/k/a, "Tammy,"** met with **Defendant Terry Louis Shook** near **Shook's** residence located at 1205 Devonshire Road, Grosse Pointe Park, Michigan.

ddd.    Between January 8, 2020 and March 17, 2020, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated with undercover DEA agents by phone to explain that banks were closing her accounts and she was having trouble wiring all of the $500,000 back to the undercover DEA account.

eee.    On March 4, 2020, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated with undercover DEA agent by phone and arranged for **Defendant Kevin Chinh Nguyen** to deliver $13,015 of the original $500,000 in person.

fff.    On March 5, 2020, **Defendant Kevin Chinh Nguyen** met with undercover agents in Tucker, Georgia and gave $10,000 cash to the undercover agents.

ggg.    On March 17, 2020, **Defendant Heather Huong Ngoc Luu, a/k/a, "Tammy,"** communicated with an undercover DEA agent by phone and arranged for **Defendant Kevin Chinh Nguyen** to deliver the missing money.

hhh.  On March 18, 2020, **Defendant Kevin Chinh Nguyen** met with undercover agents in Norcross, Georgia and gave $3,020 to undercover agents.

iii.   On December 17, 2019, **Defendant Mark Leon Harrison,** doing business as **Defendant Phoenix Fisheries, LLC,** communicated with an undercover United States Fish and Wildlife Service (USFWS) agent on the phone concerning selling shark fins and shipping shark fins to Hong Kong.

jjj.   Between January 2, 2020 and January 10, 2020, **Defendant Mark Leon Harrison,** doing business as **Defendant Phoenix Fisheries, LLC,** communicated with an undercover USFWS agent through text messages concerning shark fins and agreed to meet in Savannah, Georgia.

kkk.  On January 10, 2020, **Defendant Mark Leon Harrison** met with an undercover USFWS agent in Savannah, Georgia and inspected shark fins prior to shipping to conspirators in Hong Kong.

lll.   On January 13, 2020, **Defendant Mark Leon Harrison** communicated by email with an undercover USFWS agent concerning shipping shark fins to Hong Kong.

mmm. On January 17, 2020, **Defendant Mark Leon Harrison** communicated by email with an undercover USFWS agent concerning shipping shark fins to Hong Kong.

nnn.  On January 20, 2020, **Defendant Mark Leon Harrison** communicated by email with an undercover USFWS agent concerning shipping shark fins to Hong Kong.

ooo. On January 22, 2020, **Defendants Heather Huong Ngoc Luu, a/k/a, "Tammy," and Lam Phuoc Quang, a/k/a, "Ken," a/k/a, "Kenny,"** possessed approximately 150 pounds of marijuana that was seized by law enforcement during a traffic stop in Gwinnett County, Georgia.

ppp. On January 24, 2020, **Defendant Mark Leon Harrison** communicated by email with an undercover USFWS agent concerning shipping shark fins to Hong Kong.

qqq. Between January 28, 2020 and January 30, 2020, **Defendant Mark Leon Harrison** communicated by text messages with an undercover USFWS agent concerning shipping shark fins to Hong Kong.

rrr. Between February 3, 2020 and February 10, 2020, **Defendant Mark Leon Harrison** communicated by text messages with an undercover USFWS agent concerning payment for shark fins shipped to Hong Kong.

All in violation of Title 18, United States Code, Sections 1349 and 2.

## COUNT TWO
*Conspiracy to Possess with Intent to Distribute and to*
*Distribute a Controlled Substance*
21 U.S.C. § 846

49.    Paragraphs 1 through 25 of the Indictment are incorporated by reference as if fully set forth herein.

50.    Beginning at a time unknown to the Grand Jury, but at least from in or about 2010 and continuing through the return date of this indictment, the precise dates being unknown, in Chatham County, within the Southern District of Georgia, and elsewhere, the defendants herein,

**SERENDIPITY BUSINESS SOLUTIONS, LLC,**
**TERRY XING ZHAO WU,**
**NATALIE YE MAN CHAN WU,**
**WOONJIN LAM,**
**a/k/a, "Larry Lam,"**
**a/k/a, "Larry Lin,"**
**YING LE PANG,**
**a/k/a, "Loc,"**
**HEATHER HUONG NGOC LUU,**
**a/k/a, "Tammy,"**
**LAM PHUOC QUANG,**
**a/k/a, "Ken,"**
**a/k/a, "Kenny,"**
**KEVIN CHINH NGUYEN,**
**ELIAS SAMUEL CASTELLANOS,**
**TERRY LOUIS SHOOK,**

aided and abetted by each other and by others known and unknown, with some joining the conspiracy earlier and others joining later, did knowingly and intentionally combine, conspire, confederate and agree together and with each other,

27

and with others known and unknown, to possess with intent to distribute and to distribute 1,000 kilograms or more of marijuana, a Schedule I controlled substance.

## OBJECT OF THE CONSPIRACY

51.     The object of the conspiracy was to possess with intent to distribute and to distribute controlled substances in the Southern District of Georgia and elsewhere for financial gain, or profit, or status.

## MANNER AND MEANS OF THE CONSPIRACY

52.     It was part of the conspiracy for one or more members of the conspiracy to use cell phones to coordinate marijuana shipments and marijuana distribution.

53.     It was further part of conspiracy for one or more members of the conspiracy to require bulk cash be mailed to California for advanced payment of marijuana.

54.     It was further part of the conspiracy that members of the conspiracy and others would require wire transfers of money to bank accounts for advanced payment of marijuana.

55.     It was further part of the conspiracy that members of the conspiracy and others would mail marijuana from California to Savannah, Georgia.

56.     It was further part of the conspiracy that members of the conspiracy and others would misrepresent financial transactions to hide illegal drug proceeds as purported seafood transactions.

57.     It was further part of the conspiracy that members of the conspiracy and others would wire illegal drug proceeds to third party business accounts to hide the illegal profits.

All in violation of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code, Section 2.

# COUNT THREE
*Money Laundering Conspiracy*
18 U.S.C. § 1956(h)

58.    Paragraphs 1 through 25 of the Indictment are incorporated by reference as if fully set forth herein.

59.    Beginning at a time unknown to the Grand Jury, but at least from in or about 2010 and continuing through the return date of this indictment, the precise dates being unknown, in Chatham County, within the Southern District of Georgia, and elsewhere, the defendants herein,

**SERENDIPITY BUSINESS SOLUTIONS, LLC,
TERRY XING ZHAO WU,
NATALIE YE MAN CHAN WU,
WOONJIN LAM,
a/k/a, "Larry Lam,"
a/k/a, "Larry Lin,"
ANTHONY WU,
a/k/a, "Tony,"
BILLY CHEN,
YING LE PANG,
a/k/a, "Loc,"
PHOENIX FISHERIES, LLC,
MARK LEON HARRISON,
HEATHER HUONG NGOC LUU,
a/k/a, "Tammy,"
LAM PHUOC QUANG,
a/k/a, "Ken,"
a/k/a, "Kenny,"
KEVIN CHINH NGUYEN,
ELIAS SAMUEL CASTELLANOS,
TERRY LOUIS SHOOK,**

aided and abetted by each other and by others known and unknown, with some

30

joining the conspiracy earlier and others joining later, did knowingly and intentionally combine, conspire, confederate and agree together and with each other, and with others known and unknown, to conduct and attempt to conduct financial transactions affecting interstate commerce, with funds which were proceeds of a specified unlawful activity, that is conspiracy to commit wire fraud and mail fraud, in violation of Title 18, United States Code, Section 1349, and conspiracy to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), and which the defendants knew to be the proceeds of some form of unlawful activity, and did conspire to do so with the intent to promote the carrying on of the aforesaid specified activity, in violation of Title 18, Unite States Code, Section 1956(a)(1)(A)(i).

## OVERT ACTS

60.    In furtherance of the conspiracy, the conspirators committed and caused to be committed in the Southern District of Georgia and elsewhere, financial transactions affecting interstate commerce, using funds which were, and which the defendants knew to be, proceeds of the unlawful conspiracy to commit wire and mail fraud and conspiracy to possess with intent to distribute and to distribute marijuana, a Schedule I controlled substance, including, but not limited to, the transactions shown below:

a.     On or about July 24, 2019, conspirators received an incoming wire in the amount of $42,500 into Chase Bank account ending in 5225.

b.     On or about August 21, 2019, conspirators received an incoming wire in the amount of $21,900 into Chase Bank account ending in 9881.

c.     On or about September 4, 2019, conspirators wired $94,000 from US Bank account ending in 6948 into an undercover DEA account.

d.     On or about September 20, 2019, conspirators wired $99,000 from Chase Bank account ending in 6716 into an undercover DEA account.

e.     On or about September 23, 2019, conspirators wired $89,000 from U.S. Bank account ending in 6948 into an undercover DEA account.

f.     On or about November 4, 2019, conspirators wired $188,000 from US Bank account ending in 7763 into an undercover DEA account.

g.     On or about January 9, 2020, conspirators wired $70,000 from US Bank ending in 3336 into an undercover DEA account.

h.     On or about January 13, 2020, conspirators wired $198,000 from Chase Bank account ending in 6716 into an undercover DEA account.

i.     On or about February 6, 2020, conspirators wired $16,670 from Community Choice Credit Union account ending in 8940 into an undercover DEA account.

j.     On or about February 18, 2020, conspirators wired $80,000 from Chase Bank account ending in 6716 into an undercover DEA account.

k.     On or about February 25, 2020, conspirators wired $72,315 from a bank in Michigan into an undercover DEA account.

All in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), and 2.

## FORFEITURE ALLEGATION

The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c).

Upon conviction of the offenses set forth in Count One of this Indictment, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the defendants, **SERENDIPITY BUSINESS SOLUTIONS, LLC, TERRY XING ZHAO WU, NATALIE YE MAN CHAN WU, WOONJIN LAM, a/k/a, "Larry Lam, a/k/a, "Larry Lin," ANTHONY WU, a/k/a, "Tony," BILLY CHEN, YING LE PANG, a/k/a, "Loc," PHOENIX FISHERIES, LLC, MARK LEON HARRISON, HEATHER HUONG NGOC LUU, a/k/a, "Tammy," LAM PHUOC QUANG, a/k/a, "Ken," a/k/a, "Kenny," KEVIN CHINH NGUYEN, ELIAS SAMUEL CASTELLANOS,** and **TERRY LOUIS SHOOK,** shall forfeit to the United States of America, any property real or personal, which constitutes or is derived from proceeds traceable to the alleged specified unlawful activity, or traceable to a conspiracy to commit such offense, such property shall include, but is not limited to real property located at 1340 Skyview Drive, Burlingame, California 94010, 13408 Prosper Road, Southport, Florida 32409, 18002 Via Arroyo, San Lorenzo, California 94580, and 1046 Sanfords Walk, Tucker, Georgia 30084, and vehicles described as one (1) 2001 BMW, Blue in color, M3, California

license Plate 6FHZ030, VIN WBSBL93421JR10241, and one (1) 2006 BMW 7501, Georgia license Plate RTK6012, VIN WBAHL83566DT04948, (collectively, the "Subject Property").

Upon conviction of the offense set forth in Count Two of this Indictment, pursuant to Title 21, United States Code, Section 853, the defendants, **SERENDIPITY BUSINESS SOLUTIONS, LLC, TERRY XING ZHAO WU, NATALIE YE MAN CHAN WU, WOONJIN LAM, a/k/a, "Larry Lam," a/k/a, "Larry Lin," YING LE PANG, a/k/a, "Loc," HEATHER HUONG NGOC LUU, a/k/a, "Tammy," LAM PHUOC QUANG, a/k/a, "Ken," a/k/a, "Kenny," KEVIN CHINH NGUYEN, ELIAS SAMUEL CASTELLANOS,** and **TERRY LOUIS SHOOK,** shall forfeit any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, and any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the charged offense, including, but not limited to the Subject Property.

Upon conviction of the offense set forth in Count Three of this Indictment, pursuant to Title 18, United States Code, Section 982(a)(1), the defendants, **SERENDIPITY BUSINESS SOLUTIONS, LLC, TERRY XING ZHAO WU, NATALIE YE MAN CHAN WU, WOONJIN LAM, a/k/a, "Larry Lam," a/k/a, "Larry Lin," ANTHONY WU, a/k/a, "Tony," BILLY CHEN, YING LE PANG, a/k/a, "Loc," PHOENIX FISHERIES, LLC, MARK LEON HARRISON, HEATHER HUONG NGOC LUU, a/k/a, "Tammy," LAM PHUOC QUANG, a/k/a, "Ken," a/k/a, "Kenny," KEVIN CHINH NGUYEN, ELIAS SAMUEL**

**CASTELLANOS,** and **TERRY LOUIS SHOOK,** shall forfeit to the United States any property, real or personal, involved in the offense, or any property traceable to such property, including, but not limited to the Subject Property.

Additionally, upon conviction of any of the offenses alleged in Counts One through Three of this Indictment, the Government shall seek a Money Judgment against each defendant totaling the sum of money equal to the proceeds the defendant obtained directly or indirectly as a result of the offense charged in this Indictment.

If, as a result of any act or omission of a defendant, any of the property subject to forfeiture:

     a. cannot be located upon the exercise of due diligence;

     b. has been transferred or sold to, or deposited with, a third person;

     c. has been placed beyond the jurisdiction of this Court;

     d. has been substantially diminished in value; or

     e. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A True Bill

_____
Bobby L. Christine
United States Attorney

_____
E. Greg Gilluly
Assistant United States Attorney
*Lead Counsel

_____
Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division

_____
Tania D. Groover
Assistant United States Attorney
*Co-lead Counsel

_____
Joshua S. Bearden
Assistant United States Attorney